# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00523-COA

REMILL MASON                                              APPELLANT

v.

STATE OF MISSISSIPPI                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2015 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DEBRA MICHELLE GILES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF DISMISSED |
| DISPOSITION: | AFFIRMED - 05/30/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1. In June 2008, Remill Mason killed Terrell Richmond by shooting him in the back of the head. Mason was fifteen years old at the time, while Richmond was seventeen years old. Telvin Campbell, then sixteen years old, was also present when Mason shot Richmond. The three were in Richmond's bedroom at his home in Marshall County. Richmond was seated in front of his computer with his back to Mason and Campbell. Mason walked up behind Richmond, took a nine-millimeter handgun from his waistband, and shot Richmond in the back of the head.

¶2.    Mason was indicted for deliberate design murder. However, in May 2009 he pled guilty to manslaughter and kidnapping. The circuit judge imposed consecutive sentences of twenty and thirty years in the custody of the Mississippi Department of Corrections (MDOC).

¶3.    In 2011, Mason filed his first motion for post-conviction relief (PCR), which the circuit court denied. In October 2014, Mason filed his second PCR motion. Mason's motion asserted a number of claims, including that he was "actually and factually innocent of the kidnapping charge" and that his sentence violates the Eighth Amendment to the United States Constitution, as interpreted in *Miller v. Alabama*, 132 S. Ct. 2455 (2013). The circuit court denied Mason's motion in March 2015, and Mason filed a timely notice of appeal.

¶4.    On appeal, Mason advances the same claims as in his second PCR motion, which may be combined and summarized as follows: (1) he is "actually and factually innocent of the kidnapping charge"; (2) his conviction for both kidnapping and manslaughter violates double jeopardy; (3) his interrogation by law enforcement without his parents present violated his constitutional rights; (4) the State failed to disclose exculpatory or impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (5) ineffective assistance of counsel in connection with his guilty plea and his first PCR motion; and (6) his consecutive sentences are unconstitutional under *Miller v. Alabama*, *supra*.

¶5.    To prevail on any claim for post-conviction relief, "the movant must . . . show that the claim is procedurally alive." *Scott v. State*, 141 So. 3d 34, 35 (¶2) (Miss. Ct. App. 2014). In the absence of a statutory or judicially created exception, Mason's claims are all barred by the applicable three-year statute of limitations and the prohibition against successive PCR

motions. *See* Miss. Code Ann. §§ 99-39-5(2) & 99-39-23(6) (Rev. 2015). No exception to the procedural bars is applicable to claims (3), (4), and (5).[1] Therefore, those claims are procedurally barred and require no further discussion. For the reasons explained below, claims (1), (2), and (6) are without merit. Therefore, we affirm.

    I.       *Mason is not actually or factually innocent of the kidnapping charge.*

¶6.    Mason claims that he is entitled to post-conviction relief because he is "actually and factually innocent of the kidnapping charge." Specifically, Mason argues that Richmond was never confined against his will because the evidence shows that Mason simply shot him in the back of the head without any forewarning.

¶7.    A showing of "actual innocence" is an exception to procedural bars in federal habeas corpus proceedings. *See Howard v. State*, 945 So. 2d 326, 369-70 (¶95) (Miss. 2006); *Sneed v. State*, 85 So. 3d 298, 300 (¶¶10-11) (Miss. Ct. App. 2012). This Court has also applied the exception in proceedings under the state Uniform Post-Conviction Collateral Relief Act

---

[1] *See, e.g.*, *Lockett v. State*, 656 So. 2d 68, 74-75 (Miss. 1995) (holding that claims challenging a confession are subject to the UPCCRA's procedural bars), *overruled on other grounds by Jones v. State*, 700 So. 2d 631, 632-33 (¶4) (Miss. 1997); *Smith v. State*, 196 So. 3d 986, 993 (¶18) (Miss. Ct. App. 2016) (holding that ineffective assistance claims are subject to the UPCCRA's procedural bars); *Salter v. State*, 184 So. 3d 944, 950 (¶22) (Miss. Ct. App. 2015) ("In Mississippi, . . . only four types of 'fundamental rights' have been expressly found to survive PCR procedural bars: (1) the right against double jeopardy; (2) the right to be free from an illegal sentence; (3) the right to due process at sentencing; and (4) the right not to be subject to ex post facto laws."); *see also McMickle v. State*, 190 So. 3d 872, 874-75 (¶6) (Miss. Ct. App. 2015) (holding that a valid guilty plea waives claims challenging a confession); *Walton v. State*, 165 So. 3d 516, 525 (¶33) (Miss. Ct. App. 2015) (holding that a valid guilty plea waives a claim alleging a *Brady* violation); *Allen v. State*, 177 So. 3d 1148, 1152 (¶18) (Miss. Ct. App. 2014) (stating that our Supreme Court has never recognized a right to counsel in post-conviction proceedings in non-death-penalty cases).

(UPCCRA). *See Henderson v. State*, 170 So. 3d 547, 553-54 (¶¶21-23) (Miss. Ct. App. 2014). However, "[i]t is important to note . . . that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (quotation marks omitted). Moreover, "[i]n cases where the [State] has forgone more serious charges in the course of plea bargaining, [the] petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624.

¶8. In the present case, Mason was indicted for the more serious offense of deliberate design murder, which carried a life sentence. Miss. Code Ann. §§ 97-3-19(1)(a) & -21 (Rev. 2006). The State dismissed this charge as part of Mason's plea bargain. Whatever arguments may be made about the charge of kidnapping, Mason cannot possibly prove that "no reasonable juror would have convicted him" of the "more serious charge[]" of deliberate design murder. *Bousley*, 523 U.S. at 623-24. At his plea hearing, Mason agreed under oath that he and Campbell planned in advance to kill Richmond and that he killed Richmond by shooting him in the back of the head. Mason's statement to law enforcement also provides compelling evidence that he is actually and factually guilty of deliberate design murder. Accordingly, Mason is not actually or factually innocent for purposes of his PCR claim.

¶9. Moreover, Mason also expressly agreed under oath that he and Campbell "kidnapped [Richmond] by holding him at gunpoint." This admission provided a sufficient factual basis for the plea. Our Supreme Court has clearly held that "asportation" (i.e., movement) is not

4

an essential element of kidnapping. *See, e.g.*, *Carr v. State*, 655 So. 2d 824, 848-49 (Miss. 1995). A person is guilty of kidnapping if, "without lawful authority," he shall "forcibly seize and confine any other person . . . with intent to cause such person to be confined or imprisoned against his or her will." Miss. Code Ann. § 97-3-53 (Rev. 2006); *see Carr*, 655 So. 2d at 849. This is fairly captured in Mason's admission under oath that he kidnapped Richmond "by holding him at gunpoint." Accordingly, this issue is without merit.

> II. *Mason's convictions for manslaughter and kidnapping do not violate double jeopardy.*

¶10. Mason also claims that his convictions for manslaughter and kidnapping violate the Double Jeopardy Clause. Our Supreme Court has held that double jeopardy claims are excepted from the UPCCRA's procedural bars. *Salter*, 184 So. 3d at 950 (¶22). However, Mason's double jeopardy claim is entirely derivative of his claim that he is "actually and factually innocent of the kidnapping charge." Mason acknowledges that the offenses of kidnapping and manslaughter have substantially different elements and, therefore, conviction for both ordinarily would not raise any double jeopardy concern. However, he argues that there was no evidence to support the kidnapping charge and, therefore, the sentence he received for kidnapping was, in reality, a multiple punishment for the offense of manslaughter. As we have already determined that Mason is not actually or factually innocent of kidnapping—and that there was a sufficient basis for his plea to that charge—his derivative double jeopardy claim is also without merit.

> III. *Mason's sentence is not unconstitutional.*

¶11. Finally, Mason claims that his sentence violates the Eighth Amendment to the United

States Constitution, as interpreted by the United States Supreme Court in *Miller v. Alabama*, *supra*, and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). This claim is also without merit.

¶12. In *Miller*, the Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 132 S. Ct. at 2469.[2] The Court held that the sentencer must have "discretion" to "consider mitigating circumstances" before imposing a sentence of life without parole on a juvenile offender. *Id.* at 2475. In Mississippi, if a juvenile received a mandatory sentence of life without parole in violation of *Miller*, the remedy is a new sentencing hearing at which the sentencer has discretion to impose a sentence of life without parole or life with eligibility for parole. *See Parker v. State*, 119 So. 3d 987, 999 (¶28) (Miss. 2013).

¶13. This basic holding of *Miller* obviously does not apply to Mason's sentence. The relevant statutes under which Mason was sentenced did not "mandate" that the judge sentence him to more than two years in prison.[3] The judge had *discretion* to impose any total sentence between two and fifty years that the judge deemed just and proper. Therefore,

---

[2] *Miller* was a 5–4 decision. The lead dissent maintained that the ruling amounted to a policy judgment that was "not [the Court's] to make" and that had no basis in the text of the Constitution or the Court's precedent. *See Miller*, 132 S. Ct. at 2482 (Roberts, C.J., dissenting). Nonetheless, a decision of the United States Supreme Court obviously "is binding on the tribunals and citizens of the respective states in comparable cases." *Bolton v. City of Greenville*, 253 Miss. 656, 178 So. 2d 667, 672 (1965).

[3] For kidnapping, in the absence of jury sentencing, the court shall impose a sentence of at least one year and not more than thirty years in MDOC custody. Miss. Code Ann. § 97-3-53. For manslaughter, the court shall impose a sentence of at least two years and not more than twenty years in MDOC custody. *Id.* § 97-3-25.

6

*Miller*'s primary holding simply does not apply to Mason's case.

¶14.    Moreover, it is important to keep in mind the nature of a judge's discretionary sentencing decision under Mississippi law.  "There are at least four generally recognized factors that *any* sentencing judge should consider in the exercise of discretionary sentencing of *any* defendant who stands before the court for imposition of sentence:  (1) Rehabilitation; (2) Retribution; (3) Separation from society; and, (4) Deterrence, both general and specific." *Taggart v. State*, 957 So. 2d 981, 994 (¶31) (Miss. 2007) (emphasis added).  The sentence imposed should be an "individualized" sentence based on "*all* information that the judge may have on the particular defendant," including his personal "background," and "what sentence will hopefully have a rehabilitative effect on the defendant."  *Id.* (emphasis added). According to the United States Supreme Court, "any parent knows" and understands that a "lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young." *Roper v. Simmons*, 543 U.S. 551, 569 (2005).  Given the nature of discretionary sentencing, there is no reason for this Court to assume that the circuit judge ignored Mason's age when he sentenced him.  That Mason nonetheless received a lengthy sentence is not surprising, let alone unconstitutional, given the nature of his crime.

¶15.    In *Montgomery v. Louisiana*, *supra*, the United States Supreme Court appeared to restate and expand *Miller*'s holding:

> *Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing *life without parole* . . . . Even if a court considers a child's age before sentencing him or her to a lifetime in prison, *that sentence* still violates the Eighth Amendment for a child whose crime reflects

7

unfortunate yet transient immaturity. . . . *Miller* determined that sentencing a child to *life without parole* is excessive for all but the rare juvenile offender whose crime reflects irreparable corruption.

*Montgomery*, 136 S. Ct. at 734 (emphasis added; citations, quotation marks omitted). The Court also concluded by stating that a juvenile offender "must be given the opportunity to show [his] crime did not reflect irreparable corruption; and, if it did not, [his] hope for some years of life outside prison walls must be restored." *Id.* at 736-37.

¶16. Though *Montgomery* expanded *Miller*'s holding, it does not invalidate Mason's sentence, as Mason was not sentenced to *life* without parole. He received a fifty-year sentence commencing at age fifteen.[4] In his PCR motion, Mason asserted that "[t]his effectively takes away his entire life," but he provided nothing to support that assertion. *See Lindsay v. State*, 720 So. 2d 182, 186 (¶¶13-17) (Miss. 1998) ("Lindsay cannot argue his sentence is in effect a life sentence when he offers only opinion as to what that life expectancy will be."). To support his claim, Mason might have offered evidence such as life expectancy tables. However, the UPCCRA requires that such documents must be attached to the PCR motion. Miss. Code Ann. § 99-39-9(1)(e) (Rev. 2015). This requirement is excused only if the motion establishes good cause for a failure to provide such evidence. *See Walden v. State*, 201 So. 3d 1042, 1045-46 (¶¶14-15) (Miss. 2016).

¶17. Moreover, on appeal Mason all but concedes that he is not serving a de facto life sentence. Mason's brief, authored by capable counsel on his behalf, states that he has "a tentative release date of November 25, 2050," at which point "he will be fifty-seven (57)

_____

[4] Mason was sixteen when his sentence was imposed, but he received credit for approximately eleven months previously served.

8

years of age," and that his "life expectancy is 70 to 71 years of age."[5] Thus, Mason's sentence is lengthy, but it is not a de facto life sentence. Even if Mason were entitled to a "*Miller*/*Montgomery* hearing," and even if he could "show [that his] crime did not reflect irreparable corruption," that would only entitle him to a sentence that would permit "hope for some years of life outside prison walls." *Montgomery*, 136 S. Ct. at 736-37. Mason is already serving such a sentence. Therefore, there is no basis for this Court to order such a hearing.

¶18. The dissent argues that *Parker v. State*, *supra*, requires us to reverse. However, *Parker* is distinguishable, as the offender in that case was actually serving a sentence of life without parole. In addition, unlike Mason, Parker's life sentence rendered him ineligible for trusty time and earned time. *See* Miss. Code Ann. §§ 47-5-138.1 & -139. More important, Parker could only petition the sentencing court for "conditional release" once he reached the age of sixty-five. *Parker*, 119 So. 3d at 997 (¶23) & n.15 (citing Miss. Code Ann. § 47-5-139 (Rev. 2011)). Unlike Parker, Mason *must* be released by age sixty-five. His right to release is not "conditional." Even if Mason somehow forfeits all of his accumulated trusty time and earned time and ultimately serves every day of his sentence, the State cannot imprison him beyond age sixty-five. Such a sentence does not implicate the holdings of

---

[5] This statement in Mason's brief is based on Mason's accumulation of more than seven years of trusty time and meritorious earned time while in MDOC custody, as reflected on Mason's Inmate Time Sheet, which the State submitted in response to the Court's order requiring supplemental briefing on this issue. Because the State was not required to file a response to Mason's PCR motion, this document is not part of the record on appeal, but Mason appears to accept its accuracy.

9

*Miller* or *Montgomery*.[6]

¶19.    In summary, Mason's untimely, successive PCR motion sets forth no claim that warrants relief from his convictions or sentences.  Therefore, we affirm the judgment of the circuit court dismissing the motion.

¶20.    **THE JUDGMENT OF THE MARSHALL COUNTY CIRCUIT COURT DISMISSING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARSHALL COUNTY.**

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR.  WESTBROOKS, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., AND WESTBROOKS, J.**

**BARNES, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶21.    I concur with the majority's findings on issues (2) and (4).  Regarding Mason's claim that he was actually or factually innocent of the kidnapping charge, I agree with the majority's finding that the claim was without merit, but I write separately to highlight additional evidence supporting the factual basis for Mason's guilty plea.  For the charge of kidnapping, the State would have to prove that Mason, "without lawful authority and with or without intent to secretly confine," forcibly seized and confined Richmond "with intent

---

[6] The dissent includes an extended discussion of decisions of courts in various other states that have attempted to extend the reasoning of *Miller* and *Montgomery* beyond those cases' actual holdings.  Any attempt to extend the holdings of *Miller* and *Montgomery* is at best educated guesswork, since this entire line of United States Supreme Court cases has little to do with conventional legal analysis or reasoning.  "[I]n the end," these rulings simply reflect the justices' ever-evolving "own judgment" about the "acceptability" of a punishment imposed by a state.  *Roper*, 543 U.S. at 563.  More important, though, the dissent's survey of out-of-state authority is unnecessary because Mason's fifty-year sentence, which does not prohibit him from accumulating trusty or earned-time credit, simply does not implicate the holdings of *Miller* or *Montgomery*.

to cause [him] to be confined or imprisoned against [his] will[.]" Miss. Code Ann. § 97-3-53 (Rev. 2014). Mason claims that "[a]t no time was Richmond held against his will[,] as he had no indication that Mason was a threat to him up to[,] and including[,] the moment he was shot." Mason notes his and Campbell's statements that Richmond was just sitting, looking at his computer, and Mason shot him without a word. Thus, Mason contends there was no factual basis for his kidnapping plea.

¶22. The Mississippi Supreme Court has held that "[a] factual basis for a plea may be established by the admission of the defendant, but the admission must contain factual statements constituting a crime or be accompanied by independent evidence of guilt." *Hannah v. State*, 943 So. 2d 20, 26-27 (¶16) (Miss. 2006) (citing *Reynolds v. State,* 521 So. 2d 914, 917 (Miss. 1988)). "[A] factual basis is not established by the mere fact that a defendant enters a plea of guilty." *Id*. at 27 (citing *Lott v. State,* 597 So. 2d 627, 628 (Miss. 1992)). "In the end[,] there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged [and] 'that the defendant's conduct was within the ambit of that defined as criminal.'" *Corley v. State*, 585 So. 2d 765, 767 (Miss. 1991) (quoting *United States v. Broce,* 488 U.S. 563, 570 (1989)).

¶23. As noted by the majority, Mason agreed with the State's proffer of evidence at the plea hearing "that [Mason] kidnapped [Richmond] by holding him at gunpoint by pointing a gun into the back of his head[.]" Moreover, the investigator testified at Mason's bond hearing that the autopsy revealed Richmond died from a close-contact gunshot wound to the back of his head. This Court is "not limited to a review of a defendant's plea transcript when

11

determining if a factual basis existed for his guilty plea, but we may review the record as a whole for evidence of such." *Aucoin v. State*, 17 So. 3d 142, 146 (¶11) (Miss. Ct. App. 2009) (citing *Boddie v. State,* 875 So. 2d 180, 183 (¶8) (Miss. 2004)). The nature of the wound, therefore, indicates that the weapon was held to Richmond's head; thus, he may well have been aware of its presence and of his confinement. I find this "independent evidence of guilt," coupled with Mason's acknowledgment at the plea hearing that he held Richmond at gunpoint, sufficient to establish a factual basis for the kidnapping charge.

¶24. I respectfully dissent, however, from the majority's analysis regarding the application of *Miller v. Alabama*, 132 S. Ct. 2455 (2012)*,* and its progeny, to the present case. The majority finds that because the statutes under which Mason was convicted provided the trial judge with discretion to impose any sentence between two and fifty years, *Miller* is not applicable. Based on the caselaw evolving from *Miller*, I do not believe we can so readily dismiss Mason's argument based on the discretionary nature of his sentences. Additionally, there is authority from other jurisdictions supporting Mason's claim that aggregate sentences may constitute a "de facto" life sentence and warrant the consideration of the *Miller* factors. I would reverse and remand to the circuit court for an evidentiary hearing on the merits of Mason's claim on this issue.

*A.     Mandatory v. Discretionary*

¶25. Were we deciding this case at the time it was reviewed by the trial court on March 12, 2015, I would agree that "mandatory" means "mandatory" and that this Court should affirm the circuit court's denial of Mason's PCR motion. The express language in *Miller* clearly

indicated that its holding applied only to mandatory sentencing schemes.

> *Mandatory* life without parole for a juvenile precludes consideration of his chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him – and from which he cannot usually extricate himself – no matter how brutal or dysfunctional. . . . [T]his *mandatory* punishment disregards the possibility of rehabilitation even when the circumstances most suggest it. . . . We therefore hold that the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders.

*Miller*, 132 S. Ct. at 2467-69 (emphasis added). Furthermore, the Mississippi Supreme Court has thus far only applied *Miller*'s holding to juvenile offenders sentenced to mandatory life sentences. *See Parker v. State*, 119 So. 3d 987, 999-1000 (¶¶28-29) (Miss. 2013) (vacating the fifteen-year-old defendant's mandatory sentence of life without parole and remanding for the sentencing court to consider the protections discussed in *Miller*); *see also Jones v. State*, 122 So. 3d 698, 702 (¶10) (Miss. 2013) (vacating Brett Jones's sentence of mandatory life imprisonment and remanding for resentencing).

¶26.    However, the matter is not that simple. A split of authority arose as to whether the *Miller* protections apply to a discretionary sentencing scheme. In *United States v. Walton*, 537 F. App'x 430, 437 (5th Cir. 2013), the United States Court of Appeals for the Fifth Circuit held that neither *Graham* nor *Miller* "appl[ies] to [the petitioner's] discretionary federal sentence for a term of years, [and b]ecause [he] attempts to raise novel constitutional arguments that would require the extension of precedent, he fails to demonstrate plain error." *See also Foster v. State*, 754 S.E.2d 33, 37 (¶11) (Ga. 2014) (holding that because the sentencing court had discretion in sentencing the juvenile offender, his sentence of life

13

without parole was not "cruel and unusual punishment" under *Miller*); *Arredondo v. State*, 406 S.W.3d 300, 306 (Tex. App. 2013) (finding that the *Miller* Court "did not hold that *discretionary* life without parole sentences violate the Eighth Amendment").

¶27.     However, other jurisdictions extended *Miller*'s holding to cases where the trial court had discretion in sentencing the juvenile defendant.  In *State v. Riley*, 110 A.3d 1205, 1213-14 (Conn. 2015), the Connecticut Supreme Court concluded:

> [T]he dictates set forth in *Miller* may be violated even when the sentencing authority has discretion to impose a lesser sentence than life without parole if it fails to give due weight to evidence that *Miller* deemed constitutionally significant before determining that such a severe punishment is appropriate. . . . *Miller* and *Graham* analogized the harshness of a life sentence without parole for a juvenile to the death penalty.  This penalty is no less harsh if imposed pursuant to an exercise of discretion.

(Citations omitted); *see also Casiano v. Com. of Corrections*, 115 A.3d 1031, 1044 (Conn. 2015) (holding the discretionary "imposition of a fifty[-]year sentence without possibility for parole [for a juvenile] is subject to the sentencing procedures set forth in *Miller*").  In *McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016), the United States Court of Appeals for the Seventh Circuit interpreted *Miller* to include both discretionary and mandatory life sentences.  "The relevance to sentencing of 'children are different' also cannot in logic depend on whether the legislature has made the life sentence discretionary or mandatory; even discretionary life sentences must be guided by consideration of age-relevant factors." *Id*. (quoting *Miller*, 132 S. Ct. at 2469).

¶28.     Then, in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the Supreme Court indicated that *Miller* not only forbids mandatorily imposed sentences of life without parole,

14

but those sentences that do not take into account the "distinctive attributes of youth," stating:

> *Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." *Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects "unfortunate yet transient immaturity."* Because *Miller* determined that sentencing a child to life without parole is excessive for all but "the rare juvenile offender whose crime reflects irreparable corruption," it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status" – that is, juvenile offenders whose crimes reflect the transient immaturity of youth.

*Montgomery*, 136 S. Ct. at 734-36 (emphasis added and internal citations omitted). Justice Scalia dissented, stating that the majority "rewr[ote] *Miller*." *Id*. at 743 (Scalia, J., dissenting).

¶29.   While the State maintains that *Miller* only applies to mandatory sentencing schemes, and that *Montgomery* "in no way alters the *Miller* holding," Mason contends that in light of *Montgomery*, *Miller* "is applicable to a juvenile defendant's sentence of life without parole imposed under a discretionary sentencing scheme[.]"[7]  Recent cases indicate support for Mason's argument, although a few courts reject the argument that *Miller* is applicable to a discretionarily imposed sentence.  In *State v. Terrell*,  No. 103428, 2016 WL 3442917, at **4-5 (Ohio Ct. App. June 23, 2016), the appellate court concluded that *Montgomery* "was discussing the imposition of *mandatory life sentences without parole*"; thus, "*Montgomery* did not expand the [C]ourt's holding in *Miller*." (Emphasis in original).  A recent case, *Jones*

---

[7] Because this was an issue of first impression for our Courts, and the parties' briefs were filed before the Supreme Court's holding in *Montgomery*, we had the parties submit supplemental briefing on this issue.

*v. Commonwealth*, 795 S.E.2d 705 (Va. 2017), provides an excellent debate of *Montgomery*'s

effect on *Miller*.[8]  The *Jones* majority averred that *Miller* and *Montgomery* "addressed

*mandatory* life sentences without possibility of parole."  *Id*. at 721.

> We acknowledge that, perhaps, some post-*Montgomery* opinion from the
> United States Supreme Court might expand the Eighth Amendment to
> "mandatory or discretionary" juvenile life sentences generally, . . . with the
> evident purpose of moving the bar so high that all life sentences for convicted
> juvenile murderers and rapists, or juveniles convicted of other similarly serious
> crimes, eventually will be judicially deemed cruel and unusual punishment as
> a matter of law.  The question before us, however, is what the law is now, not
> what it may be in the future.  We are not in the speculative business of plotting
> the future course of federal precedents.

*Id*. (citations and quotations omitted).  The dissent in *Jones*, however, adopted an expanded

analysis of *Montgomery*, stating:

> *Montgomery* made it clear that the focus of *Miller* was not that only mandatory
> life sentences are unconstitutional; rather, it is that the Eighth Amendment
> requires individualized consideration before a juvenile can be sentenced to life
> in prison without the possibility of parole. . . . [W]hen viewed through the lens
> of *Montgomery*, it is clear that *Miller*'s discussion of mandatory life sentences
> was not meant to limit application of the opinion to that instance, but rather to
> demonstrate how mandatory sentencing schemes foreclose the necessary
> individualized consideration.

*Id*. at 724.

¶30.    Other jurisdictions have determined that *Montgomery* stands for the proposition that

*Miller* protections should also be afforded to a defendant whose life sentence was imposed

under a discretionary sentencing scheme.  In *People v. Nieto*, 52 N.E.3d 442, 454 (¶49) (Ill.

App. Ct. 2016), the Appellate Court of Illinois concluded:

---

[8] The Virginia Supreme Court was considering Jones's claim on remand from the United States Supreme Court's grant of a petition of certiorari for reconsideration in light of *Montgomery*.  *See Jones v. Virginia*, 136 S. Ct. 1358 (2016).

Following *Montgomery,* we agree that there is more to *Miller.* Trial courts must consider a juvenile's special characteristics even when exercising discretion. Where the record affirmatively shows that the trial court failed to comprehend and apply such factors in imposing a discretionary sentence of natural life without the possibility of parole, a juvenile defendant is entitled to relief.

In *Landrum v. State*, 192 So. 3d 459, 467 (Fla. 2016), the Florida Supreme Court determined that the *Montgomery* Court "clarified that the *Miller* Court had no intention of limiting its rule of requiring individualized sentencing for juvenile offenders only to mandatorily-imposed sentences of life without parole, when a sentencing court's exercise of discretion was not informed by *Miller*'s considerations." (Citing *Montgomery*, 136 S. Ct. at 735).

[A]t the heart of *Miller*, as further amplified in *Montgomery*, is the Eighth Amendment's prohibition of imposing certain punishments on juvenile offenders that fail to consider a juvenile's "lessened culpability and greater capacity for change." *Horsley* [*v. State*], 160 So. 3d [393,] 396 [(Fla. 2015)] (citing *Miller*, 132 S. Ct. at 2460) (internal quotations omitted). Therefore, the exercise of a sentencing court's discretion when sentencing juvenile offenders must be informed by consideration of the juvenile offender's "youth and its attendant circumstances" as articulated in *Miller* . . . . Without this individualized sentencing consideration, a sentencer is unable to distinguish between juvenile offenders whose crimes "reflect transient immaturity" and those whose crimes reflect "irreparable corruption." *Miller*, 132 S. Ct. at 2469. Failing to make this distinction, otherwise, would mean life sentences for juveniles would not be exceedingly rare, but possibly commonplace.

*Landrum*, 192 So. 3d at 467; *see also United States v. Johnson*, No. 3:08-CR-00010, 2016 WL 3653753, at *2 (W.D. Va. June 28, 2016) ("[A] particular life sentence (even one stemming from a sentencing regime that permits a non-life sentence) would be unconstitutional as-applied if the sentencer did not abide by the commands of *Miller* and *Montgomery*."). In *State v. Scott*, 385 P.3d 783, 787 (¶20) (Wash. Ct. App. 2016), the Court of Appeals of Washington rejected the State's argument that *Miller* "was immaterial because

17

[the petitioner's] sentence was not the result of a mandatory sentencing scheme," holding: "*Montgomery* clearly indicates that life without parole is unconstitutional for most juveniles, whether imposed under a mandatory or a discretionary sentencing scheme."

¶31.     After due consideration, I agree with the courts' analysis in *Johnson*, *Landrum*, *Scott*, and *Nieto*.  I see no constitutional reason why a juvenile with the mandated sentence of life without parole should receive a *Miller* hearing, while a juvenile with the discretionary life sentence should not if the juvenile is incarcerated for life without his "youth and attendant characteristics" being taken into account.  The majority submits that it should not be assumed the circuit court failed to consider Mason's age in sentencing, noting *Roper*'s comments that "any parent knows. . . [the] lack of maturity and . . . underdeveloped sense of responsibility . . . found in youth."  *See Roper v. Simmons*, 543 U.S. 551, 569 (2005).  Seven years after *Roper*, however, the *Miller* Court outlined specific factors for courts to consider when sentencing a juvenile – the offender's "immaturity, impetuosity, and failure to appreciate risks and consequences"; the offender's "family and home environment"; "the circumstances of the homicide offense, including the extent of [his] participation in the conduct and the way familial and peer pressures may have affected him"; his "inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and "the possibility of rehabilitation[.]"[9] Consequently, as the Supreme Court observed in *Montgomery*, "*Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole . . . .  Even if a court considers a child's age before

---

[9] *See Miller*, 132 S. Ct. at 2468.

18

sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Montgomery*, 136 S. Ct. at 734. As the circuit court's sentencing in this case was not informed by *Miller* and *Montgomery*, I find this Court cannot just assume the circuit court considered Mason's age in sentencing, much less his "youth and its attendant characteristics, along with the nature of his crime." The judge simply accepted the State's recommendation and sentenced Mason to the maximum sentences allowed by law.

¶32.    The next issue that must be addressed is whether a lengthy term of incarceration may constitute a "de facto" life sentence in the context of the sentencing of a juvenile defendant.

> B.    *Whether* Miller *and* Montgomery *are also applicable to a lengthy term of years that constitutes a "de facto" life sentence.*

¶33.    Mason argues that "the *Miller* principles should apply even when the trial court imposes lengthy term sentences as well as aggregate or consecutively-imposed sentences." A number of cases since *Miller* support his argument. In *Bear Cloud v. State*, 334 P.3d 132, 141-42 (¶33) (Wyo. 2014), the Wyoming Supreme Court determined that the holdings of *Roper*, *Graham*, and *Miller* require a sentencing court to weigh the *Miller* factors "when, as here, the aggregate sentences result in the functional equivalent of life without parole."

> To do otherwise would be to ignore the reality that lengthy aggregate sentences have the effect of mandating that a juvenile "die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life *with* the possibility of parole) more appropriate." *Miller,* 132 S. Ct. at 2460. Such a lengthy sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of the juvenile convict, he will remain in prison for the rest of his days." *Graham,* 560 U.S. at 70. That is exactly the

19

result that *Miller* held was unconstitutional. *Miller,* 132 S. Ct. at 2460.

*Id*. at 142 (¶33). The Iowa Supreme Court, in *State v. Null*, 836 N.W.2d 41, 72 (Iowa 2013), concluded:

> *Miller*'s principles are fully applicable to a lengthy term-of-years sentence[,] as was imposed in this case[,] because an offender sentenced to a lengthy term-of-years sentence should not be worse off than an offender sentenced to life in prison without parole who has the benefit of an individualized hearing under *Miller*.

Sixteen-year-old Denem Null was "required to serve at least 52.5 years of [his] seventy-five-year aggregate sentence for second-degree murder and first-degree robbery." *Id*. at 45. Null's argument was that this was a "de facto life sentence, . . . cit[ing] a National Vital Statistics Report indicating the life expectancy of a twenty-year-old black male is 51.7 years." *Id*. at 50-51. Discussing this issue in the context of the "cruel and unusual punishment provision" of the Iowa Constitution, article I, section 17, the Iowa Supreme Court concluded that the provision "requires that a district court recognize and apply the core teachings of *Roper, Graham*, and *Miller* in making sentencing decisions for long prison terms involving juveniles." *Id*. at 51, 74. The *Null* court further noted that long-term incarceration may present "health and safety risks that tend to decrease life expectancy as compared to the general population." *Id*. at 71. Determining that "such a lengthy sentence imposed on a juvenile is sufficient to trigger *Miller*-type protections," Null's sentences were vacated and remanded for resentencing. *Id*. at 45, 71.

¶34. In *Casiano*, 115 A.3d at 1045, the Connecticut Supreme Court rejected the idea "that, in order for a sentence to be deemed 'life imprisonment,' it must continue until the literal end

of one's life."  Sixteen-year-old Jason Casiano pleaded guilty to felony murder and two

counts of armed robbery and was sentenced under a plea agreement to "a total effective

prison term of fifty years" without parole.[10]  *Id*. at 1033.  The *Casiano* court concluded that

"the imposition of a fifty-year sentence without the possibility of parole is subject to the

sentencing procedures set forth in *Miller*."  *Id*. at 1044.

> [A] fifty[-]year term and its grim prospects for any future outside of prison
> effectively provide a juvenile offender with "no chance for fulfillment outside
> prison walls, no chance for reconciliation with society, no hope." [*Graham*,
> 560 U.S.] at 79.  Thus, we agree with the Iowa Supreme Court [in *Null*] that
> "even if lesser sentences than life without parole might be less problematic, we
> do not regard the juvenile's potential future release in his or her late sixties
> after a half century of incarceration sufficient to escape the rationales of
> *Graham* or *Miller*."  *Null*, supra, 836 N.W.2d at 71[.]

*Id*. at 1047.  *But see State v. Logan*, 125 A.3d 581, 589 (Conn. App. Ct. 2015) (concluding

a seventeen-year-old's thirty-one-year sentence "d[id] not approach what the . . . Supreme

Court described in *Roper*, *Graham*, and *Miller*," and noting those cases "cannot be read to

mean that all mandatory deprivations of liberty are of potentially constitutional magnitude").

Thus, these cases stand for the proposition that *Miller* protections may apply to lengthy

aggregate sentences.

¶35.     The State asserts "with confidence that Mason is not serving a de facto life sentence"[11]

---

[10] Casiano received a fifty-year sentence for the murder charge, along with separate twenty-year sentences for the armed robbery counts, which were to run concurrent to the murder sentence.

[11] The State argues Mason is not subject to a "de facto" life sentence as he is eligible for trusty time earned, and eligible for early release "within his lifetime."  It attached an MDOC time sheet to the supplemental brief, acknowledging that the document was outside the record on appeal, to support its argument that Mason is eligible for a reduction in his sentence.  The time sheet reflects that Mason has earned over seven years in total trusty time.

and "there is no controlling authority to guide the determination of what would constitute a de facto life sentence for *Miller* purposes." Citing *McCoy v. State*, 147 So. 3d 333, 342 (¶20) (Miss. 2014), the State claims that whether a defendant's "sentences were ordered to run consecutively does not change the analysis, as. . . each sentence is to be imposed without respect to the other." I find *McCoy* distinguishable from the present case as it does not concern a juvenile defendant. Moreover, the trial court in *McCoy* "reviewed mortality tables to determine that [James] McCoy's life expectancy was 40.06 years" and accordingly sentenced him to thirty-five years in custody. *Id*. I find the Illinois appellate court's analysis in *Nieto* instructive:

> [T]he concerns of *Miller* "are not satisfied by pretending that a cumulative sentence labeled as a term of years will in all cases be distinct from a sentence of natural life without the possibility of parole." [*People v.*] *Gipson*, 34 N.E.3d 560[, 577 (Ill. App. Ct. 2015)]. *While we acknowledge that Illinois typically treats consecutive sentences as individual sentences and does not aggregate them for purposes of evaluating whether a sentence is excessive* (*People v. Carney*, 752 N.E.2d 1137 (Ill. 2001)), *we believe a different analytical framework is called for in the context of consecutive sentences imposed for crimes committed by a juvenile.* Given that defendant will not be released from prison until he is 94 years old, we find that he effectively received a sentence of natural life without parole.[12]

*Nieto*, 52 N.E.3d at 452 (¶42) (emphasis added); *see also State v. Ronquillo*, 361 P.3d 779, 785 (¶¶22-23) (Wash. Ct. App. 2015) (concluding a sixteen-year-old defendant's aggregate

---

But it also indicates that Mason was taken "Out of Trusty Status" on August 16, 2016, and his tentative release date is November 25, 2050. Mason would be fifty-seven years old. Although we may not consider matters outside the record on appeal, we will address this argument in more detail below. *See Hampton v. State*, 148 So. 3d 992, 995 (¶7) (Miss. 2014).

[12] Michael Nieto was sentenced to a discretionary aggregate term of seventy-eight years.

sentences of 51.3 years were the "functional equivalent of a life sentence" and subject to *Miller* protections, even though the separate sentences involved "four different victims"); *Null*, 836 N.W.2d at 71 (noting the *Miller* court "offered no indication" a defendant's convictions for multiple crimes "affected the analysis" and concluding that "the imposition of an aggregate sentence does not remove the case from the ambit of *Miller*'s principles").

¶36. Fifteen-year-old Mason was convicted in 2008, several years before the Supreme Court's holdings in *Miller* and *Montgomery*. Thus, the sentencing court "did not have the benefit of th[e Supreme] Court's guidance regarding the 'diminished culpability of juveniles' and the ways that 'penological justifications' apply to juveniles with 'lesser force than to adults.'" *See Adams v. Alabama*, 136 S. Ct. 1796, 1800 (2016) (quoting *Roper*, 543 U.S. at 571) (Sotomayor, J., concurring in decision to grant, vacate, and remand). Had Mason gone to trial and been convicted of murder, which carries a mandatory sentence of life in prison, we would be bound by precedent to vacate his sentence and remand to the sentencing court for consideration of the *Miller* factors. I can find no constitutional justification for denying that same hearing to Mason because he pled guilty to lesser charges that resulted in aggregate sentences of fifty years without eligibility for parole. As the Supreme Court of New Jersey recently stated in *State v. Zuber*, 152 A.3d 197, 211 (N.J. 2017):

> Will a juvenile be imprisoned for life, or will he have a chance at release? It does not matter to the juvenile whether he faces formal "life without parole" or multiple term-of-years sentences that, in all likelihood, will keep him in jail for the rest of his life. We believe it does not matter for purposes of the Federal or State Constitution either.

Although the State argues that "[t]here is simply no evidence before the Court to suggest that

a [thirty-]year sentence, or [twenty-]year sentence exceeds Mason's life expectancy," it is the fifty-year sentence imposed in this instance that this Court must consider, and I am not as "confiden[t]" as the State that Mason is not serving a "de facto life sentence," especially in light of the fact that Mason is a black male who has been in the custody of the MDOC since he was fifteen years old and will remain in custody at least until his late fifties.[13]  I also disagree with the majority's conclusion that Mason has "all but concede[d]" that he is not serving a life sentence based on Mason's acknowledgment that he has a tentative release date of 2050, when Mason would be fifty-seven years old.  Mason expressly argues in his supplemental brief that "[f]ifty years is a lengthy term sentence, which effectively resembles or is the functional equivalent of a life sentence."  Additionally, I note the MDOC's time sheet is not in the Court's official records.  Although the majority contends Mason should have offered evidence "such as life expectancy tables" to support his claim, "[t]he purpose of an evidentiary hearing is for the court to receive evidence in order to make findings of fact." *Rowland v. Britt*, 867 So. 2d 260, 262 (¶9) (Miss. Ct. App. 2003) (citing *Lyle v. State*, 756 So. 2d 1 (¶7) (Miss. Ct. App. 1999)).  As previously discussed, cases such as *Ronquillo* and *Casiano*, which have determined that a discretionary sentence totaling fifty years, is sufficient to raise *Miller* concerns.  I believe the issue is properly deserving of an evidentiary hearing.

¶37.    Regarding the State's argument that because Mason was eligible for trusty/earned time and not serving his entire fifty-year sentence, he is not subject to a "de facto life sentence,"

---

[13] This is assuming, for the sake of argument only, that the State's off-the-record MDOC time sheet is accurate.

24

we note that in *Parker*, 119 So. 3d at 997 (¶23), the Mississippi Supreme Court soundly "reject[ed]" the State's argument that since Parker would be eligible for conditional release from his sentence of life without parole when he reaches sixty-five, "he [would] not [be] mandate[d] to spend the rest of his life in prison," and this "conditional release satisfies the *Miller* mandate."

> Conditional release is more akin to clemency, which the Supreme Court has held "as a matter of law" to be different from parole "despite some surface similarities." *Solem v. Helm*, 463 U.S. 277, 300 (1983). Additionally, a conditional release would not be determined by the sentencing authority at the time of sentencing based on age and other characteristics, as *Miller* mandates.

*Parker*, 119 So. 3d at 997 (¶23). Likewise, whether Mason is to be released early due to any earned/trusty time is determined by the MDOC; it is not determined by the trial court at the time of sentencing.

¶38. Accordingly, I would reverse the circuit court's denial of Mason's PCR motion and remand to the circuit court for an evidentiary hearing as to whether Mason's aggregate fifty-year sentence constitutes a "de facto" life sentence that affords him consideration of the factors discussed in *Miller*. This will provide Mason, and the State, an opportunity to offer additional evidence (e.g., mortality tables, prior school records, etc.) regarding Mason's life expectancy at the time he was sentenced. If the circuit court finds that Mason's sentences are subject to the *Miller* protections, it may, after consideration of the factors, still uphold Mason's sentences as a "rare" or "uncommon" case. Or it may determine he will be eligible for parole consideration notwithstanding the current provisions of Mississippi Code Annotated section 47-7-3(1)(f) (Supp. 2016), which prohibit parole for those crimes for

25

which Mason has been convicted.  *See Parker*, 119 So. 3d at 999 (¶28).[14]

**IRVING, P.J., AND WESTBROOKS, J., JOIN THIS OPINION.**

---

[14] The *Montgomery* Court reasoned that *Miller*'s retroactive effect "does not require States to relitigate sentences"; rather the State "may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Montgomery*, 136 S. Ct. at 736.  "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity – and who have since matured – will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Id*.