THOMAS, J., concurring

# SUPREME COURT OF THE UNITED STATES

## RENALDO CHANTE ADAMS *v.* ALABAMA

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
CRIMINAL APPEALS OF ALABAMA

No. 15–6289.   Decided May 23, 2016

The motion of petitioner for leave to proceed *in forma pauperis* and the petition for writ of certiorari are granted. The judgment is vacated, and the case is remanded to the Court of Criminal Appeals of Alabama for further consideration in light of *Montgomery* v. *Louisiana*, 577 U. S. ___ (2016).

JUSTICE THOMAS, with whom JUSTICE ALITO joins, concurring in the decision to grant, vacate, and remand.

The Court has held the petition in this and many other cases pending the decision in *Montgomery* v. *Louisiana*, 577 U. S. ___ (2016). In holding this petition and now vacating and remanding the judgment below, the Court has not assessed whether petitioner's asserted entitlement to retroactive relief "is properly presented in the case." *Id.*, at ___ (slip op., at 13). On remand, courts should understand that the Court's disposition of this petition does not reflect any view regarding petitioner's entitlement to relief. The Court's disposition does not, for example, address whether an adequate and independent state ground bars relief, whether petitioner forfeited or waived any entitlement to relief (by, for example, entering into a plea agreement waiving any entitlement to relief), or whether petitioner's sentence actually qualifies as a mandatory life without parole sentence.

# SUPREME COURT OF THE UNITED STATES

## RENALDO CHANTE ADAMS *v.* ALABAMA

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
CRIMINAL APPEALS OF ALABAMA

No. 15–6289.   Decided May 23, 2016

JUSTICE ALITO, with whom JUSTICE THOMAS joins,
concurring in the decision to grant, vacate, and remand.*

The Court grants the petition for a writ of certiorari in
this case, vacates the decision below, and remands for
reconsideration in light of *Montgomery* v. *Louisiana*, 577
U. S. ___ (2016), which holds that *Miller* v. *Alabama*, 567
U. S. ___ (2012), applies retroactively to cases on state
collateral review.  As a result of *Montgomery* and *Miller*,
States must now ensure that prisoners serving sentences
of life without parole for offenses committed before the age
of 18 have the benefit of an individualized sentencing
procedure that considers their youth and immaturity at
the time of the offense.

The present case differs from most of those in which the
Court grants, vacates, and remands for reconsideration in
light of *Montgomery*.  The petitioner in this case—as with
a few others now before the Court—was sentenced to
death prior to our decision in *Roper* v. *Simmons*, 543 U. S.
551 (2005), which held that the Eighth Amendment pro-
hibits a death sentence for a minor.  During that pre-
*Roper* period, juries in capital cases were required at the
penalty phase to consider "all relevant mitigating evi-
dence," including "the chronological age of a minor" and a

———————

*This opinion also applies to the other petitions held for *Montgomery*
v. *Louisiana*, 577 U. S. ___ (2016), in which the defendant was originally
sentenced to death, No. 15–1, *Johnson* v. *Manis*; No. 15–6284, *Knotts*
v. *Alabama*; No. 15–6290, *Bonds* v. *Alabama*; No. 15–6300, *Slaton* v.
*Alabama*; No. 15–6306, *Flowers* v. *Alabama*; No. 15–6904, *Barnes* v.
*Alabama*; and No. 15–6905, *Barnes* v. *Alabama*.

youthful defendant's "mental and emotional development." *Eddings* v. *Oklahoma*, 455 U. S. 104, 116–117 (1982); see also *Roper* v. *Simmons*, *supra*, at 603 (O'Connor, J., dissenting) ("A defendant's youth or immaturity is, of course, a paradigmatic example" of the type of mitigating evidence to which a "sentencer in a capital case must be permitted to give full effect"). After *Roper*, death sentences imposed on prisoners convicted of murders committed as minors were reduced to lesser sentences.

In the present case, petitioner committed a heinous murder in 1997 when he was 17 years old. See 955 So. 2d 1037, 1047–1049 (Ala. Crim. App. 2003). Wielding a knife and wearing a stocking mask to conceal his face, petitioner climbed through a window into the home of Melissa and Andrew Mills. Petitioner demanded money, but the Mills family had only $9 on hand. While petitioner remained in the Mills home with Melissa Mills and her three young children, Andrew Mills raced to an ATM and withdrew $375, the maximum amount available. Petitioner then demanded more money, so Andrew went to a nearby grocery store to cash a check. While holding her at knife point, petitioner raped Melissa Mills, who was four months pregnant, before stabbing her repeatedly in the neck, upper and lower chest, and back. The stab wounds pierced her liver and lungs, and she eventually succumbed.

When police arrived at the Mills' home, summoned by the grocery store clerk, Melissa Mills was gasping for breath and bleeding profusely. Petitioner fled but was captured nearby 20 minutes later. His clothes were covered in Melissa Mills' blood, and he had in his possession the knife used to kill her, which was also covered in her blood. Nine blood-smeared dollar bills were located nearby. Petitioner's DNA matched the semen recovered from the rape kit performed as part of Melissa Mills' autopsy.

A jury found petitioner guilty of murder and then pro-

ceeded to decide whether he should be sentenced to death or life imprisonment without parole. *Id.*, at 1048; see Ala. Code §13A–5–45 (1982). Under the Alabama law then in force, "[t]he age of the defendant at the time of the crime" was one of the statutory "[m]itigating circumstances" that the jury was required to consider. §13A–5–51(7). The jury nevertheless concluded that petitioner's age did not warrant a sentence of less than death. After *Roper*, however, petitioner's sentence was commuted to life without parole. See *Ex parte Adams*, 955 So. 2d 1106 (Ala. 2005).

In cases like this, it can be argued that the original sentencing jury fulfilled the individualized sentencing requirement that *Miller* subsequently imposed. In these cases, the sentencer necessarily rejected the argument that the defendant's youth and immaturity called for the lesser sentence of life imprisonment without parole. It can therefore be argued that such a sentencer would surely have felt that the defendant's youth and immaturity did not warrant an even lighter sentence that would have allowed the petitioner to be loosed on society at some time in the future. In short, it can be argued that the jury that sentenced petitioner to death already engaged in the very process mandated by *Miller* and concluded that petitioner was not a mere "'child'" whose crimes reflected "'unfortunate yet transient immaturity,'" *post*, at 2 (SOTOMAYOR, J., concurring in decision to grant, vacate, and remand), but was instead one of the rare minors who deserves life without parole.[†]

––––––––––

[†]A similar argument can be made in other cases in which the jury originally sentenced a minor to death. Here are some examples of other cases in which it might be inferred that the original sentencing juries concluded that the evidence established "irreparable corruption," despite the fact that the defendant had not yet reached the age of 18 at the time of the crime. *Montgomery* v. *Louisiana*, 577 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 18).

Petitioner William Knotts, No. 15–6284, was 17 years old when he

In cases in which a juvenile offender was originally sentenced to death after the sentencer considered but rejected youth as a mitigating factor, courts are free on remand to evaluate whether any further individualized consideration is required.

––––––––––

escaped from a juvenile facility, broke into two houses, and stole multiple weapons, hundreds of rounds of ammunition, food, and other supplies. He then hid in the woods to plan an attack on a woman who had called him a "'cracker'" and a "'honky.'" Knotts broke into the woman's home, laid in wait for her, and shot her to death in front of her 2-year-old son. The victim's husband discovered her body—and their son, sitting next to her, crying, covered in blood—four hours later. *Knotts* v. *State*, 686 So. 2d 431, 442, 442–443 (Ala. Crim. App. 1995).

Petitioner Nathan Slaton, No. 15–6300, was 17 years old when he decided to spend a morning shooting birds with his BB gun. He then got into a fight with his next-door neighbor over the gun, so he entered her house, unplugged her phone, raped her, beat her over the head, strangled her, and shot her. Slaton confessed to the rape-murder. *Slaton* v. *State*, 680 So. 2d 879, 884–885 (Ala. Crim. App. 1995).

Petitioner Michael Barnes, Nos. 15–6904, 15–6905, was 17 years old when he committed capital murder in the course of a burglary and rape. Neighbors of the victim saw smoke in her house. When firefighters responded, they discovered Barnes' victim. Her severely burned body was tied to her bed, an electrical appliance cord wrapped around her neck, and charred paper scattered about her. An autopsy revealed that the victim had been sexually assaulted and was alive when the fire was set. She died from strangulation, smoke inhalation, and her burns. *Barnes* v. *State*, 704 So. 2d 487, 489–490 (Ala. Crim. App. 1997).

Petitioner Shermaine Johnson, No. 15–1, was a serial rapist (he had committed four rapes, including the rape of a 13-year-old girl) before, at the age of 16, he committed the rape and brutal murder for which he was sentenced to death. *Johnson* v. *Commonwealth*, 259 Va. 654, 662–667, 529 S. E. 2d 769, 773–776 (2000).

# SUPREME COURT OF THE UNITED STATES

## RENALDO CHANTE ADAMS *v.* ALABAMA

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
CRIMINAL APPEALS OF ALABAMA

No. 15–6289.   Decided May 23, 2016

JUSTICE SOTOMAYOR, with whom JUSTICE GINSBURG joins, concurring in the decision to grant, vacate and remand.*

The petitioners in these cases were sentenced to death for crimes they committed before they turned 18. In most of these cases, petitioners' sentences were automatically converted to life without the possibility of parole following our decisions outlawing the death penalty for juveniles.[1] See *Roper* v. *Simmons*, 543 U. S. 551 (2005); *Thompson* v. *Oklahoma*, 487 U. S. 815 (1988). Today, we grant, vacate, and remand these cases in light of *Montgomery* v. *Louisiana,* 577 U. S. ___ (2016), for the lower courts to consider whether petitioners' sentences comport with the exacting limits the Eighth Amendment imposes on sentencing a juvenile offender to life without parole.

JUSTICE ALITO suggests otherwise, noting that the juries that originally sentenced petitioners to death were statutorily obligated to consider the mitigating effects of petitioners' youth. "In cases like this," he writes, it can "be

————————

*This opinion also applies to No. 15–1, *Johnson* v. *Manis*; No. 15–6284, *Knotts* v. *Alabama*; No. 15–6290, *Bonds* v. *Alabama*; No. 15–6300, *Slaton* v. *Alabama*; No. 15–6306, *Flowers* v. *Alabama*; No. 15–6904, *Barnes* v. *Alabama*; and No. 15–6905, *Barnes* v. *Alabama*.

[1]The only exception is that of Michael Shawn Barnes, who was sentenced to life without parole after all three of the juries to consider the question recommended life without parole over the death penalty. See Reporter's Tr. 1, *Alabama* v. *Barnes*, Nos. CC 94–1401 and CC 94–2913 (C. C. Mobile Cty., Ala., June 12, 1998), 5 Record 202 (sentencing judge states only, "I've overruled two juries in this case, but I'm not going to overrule this one").

argued that the original sentencing jury fulfilled the individualized sentencing requirement that *Miller* subsequently imposed." *Ante,* at 3 (concurring opinion).

But *Miller* v. *Alabama*, 567 U. S. ___ (2012), did not merely impose an "individualized sentencing requirement"; it imposed a substantive rule that life without parole is only an appropriate punishment for "the rare juvenile offender whose crime reflects irreparable corruption." *Montgomery*, 577 U. S., at ___ (slip op., at 17) (internal quotation marks omitted). "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity." *Id.,* at ___–___ (slip op., at 16–17) (same). There is no indication that, when the factfinders in these cases considered petitioners' youth, they even asked the question *Miller* required them not only to answer, but to answer correctly: whether petitioners' crimes reflected "transient immaturity" or "irreparable corruption." 577 U. S., at ___–___ (slip op., at 16–17).

The last factfinders to consider petitioners' youth did so more than 10—and in most cases more than 20—years ago. (Petitioners' post-*Roper* resentencings were generally automatic.) Those factfinders did not have the benefit of this Court's guidance regarding the "diminished culpability of juveniles" and the ways that "penological justifications" apply to juveniles with "lesser force than to adults." *Roper*, 543 U. S., at 571. As importantly, they did not have the benefit of this Court's repeated exhortation that the gruesomeness of a crime is not sufficient to demonstrate that a juvenile offender is beyond redemption: "The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id.*, at 570; see also *id.,* at 573; *Miller*, 567 U. S., at __ (slip op., at 17).

When petitioners were sentenced, their youth was just one consideration among many; after *Miller*, we know that youth is the dispositive consideration for "all but the rarest of children." *Montgomery*, 577 U. S., at \_\_\_ (slip op., at 14). The sentencing proceedings in these cases are a product of that pre-*Miller* era. In one typical case, a judge's sentencing order—overruling a unanimous jury verdict recommending life without parole instead of death—refers to youth only once, noting "the court finds that the age of the defendant at the time of the crime is a mitigating circumstance" and then that "[t]he [c]ourt rejects the advisory verdict of the jury, and finds that the aggravating circumstances in this case outweigh the mitigating circumstances and that the punishment should be death." Sentencing Order, *Alabama* v. *Barnes*, No. CC 94–1401 (C. C. Mobile Cty., Ala., Dec. 12, 1995), 2 Record 225. Other sentencing orders are similarly terse.[2] In at least two cases, there is no indication that youth was considered as a standalone mitigating factor.[3] In two others, factfind-

---

[2] See, *e.g.,* Sentencing Order, *Alabama* v. *Adams*, No. CC 97–2403 (C. C. Montgomery Cty., Ala., Dec. 10, 1998), 1 Record 309–311 ("This Court finds that the age of Adams at the time of the crime as a mitigating circumstance, does exist and is considered by this Court. This Court notes that Adams's age alone is not determinative of whether the death penalty should be imposed in this case, nor is imposition of such a sentence unconstitutional. . . . These choices made by Adams diminish the impact of his age as a mitigating circumstance . . . "); Sentencing Order, *Alabama* v. *Knotts*, No. CC 91–2537 (C. C. Montgomery Cty., Ala., Oct. 2, 1992), 2 Record 595, 606 ("The defendant was seventeen (17) years and eleven (11) months old at the time of the crime. The Court finds this to be a mitigating circumstance, but also finds that the aforestated aggravating circumstances outweigh this mitigating evidence") (overruling 9-to-3 jury recommendation for life without parole); Appendix, *Alabama* v. *Slaton*, No. CC 87–200210 (C. C. Marshall Cty., Ala., May 22, 1990), 13 Record 242 (considering only "[t]hat the defendant was seventeen years old at the time of the crime").

[3] See Sentencing Order, *Alabama* v. *Bonds*, No. CC 00–1289 (C. C. Houston Cty., Ala., Nov. 14, 2002), 1 Record 257; Jury Instructions,

ers did not put "great weight"[4] on considerations that we have described as particularly important in evaluating the culpability of juveniles, such as intellectual disability, an abusive upbringing, and evidence of impulsivity and immaturity. *Miller*, 567 U. S., at ___ (slip op, at 14).

Standards of decency have evolved since the time petitioners were sentenced to death. See *Roper*, 543 U. S., at 561. That petitioners were once given a death sentence we now know to be constitutionally unacceptable tells us nothing about whether their current life-without-parole sentences are constitutionally acceptable. I see no shortcut: On remand, the lower courts must instead ask the difficult but essential question whether petitioners are among the very "rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, 577 U. S., at ___ (slip op., at 17).

---

*Johnson* v. *Virginia*, No. 992525 (Va., Jan. 11, 2000), I App. 225–250.

[4] See Sentencing Order, *Alabama* v. *Knotts*, No. CC 91–2537 (C. C. Montgomery Cty., Ala., Oct. 2, 1992), 2 Record 607–610; Sentencing Order, *Alabama* v. *Barnes*, No. CC 94–1401 (C. C. Mobile Cty., Ala., Dec. 12, 1995), 2 Record 223 ("borderline mental retardation" makes defendant "no less accountable for his actions").