2021 IL App (1st) 171384-U

SIXTH DIVISION
January 22, 2021

No. 1-17-1384

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 96 CR 123 |
| | ) | |
| RICHARD MORRIS, | ) | Honorable Erica L. Reddick, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Johnson concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The first-stage summary dismissal of petitioner's *pro se* petition for postconviction relief is affirmed, where his claim that the 105-year sentence imposed for the offense he committed at age 22 violated the proportionate penalties clause of the Illinois Constitution and the eighth amendment of the United States Constitution had no arguable basis in law or in fact.

¶ 2   Petitioner, Richard Morris, appeals from the first-stage dismissal of his *pro se* petition for postconviction relief. After a jury trial, petitioner, age 22, was convicted of first-degree murder, aggravated vehicular hijacking, and aggravated kidnapping. He was sentenced to death. On direct appeal to the Illinois Supreme Court, his convictions were reversed, and the matter was

remanded for a new trial. *People v. Morris*, 209 Ill. 2d 137 (2004). Petitioner was convicted

again on retrial in 2006, and sentenced to consecutive terms of 60 years for first-degree murder,

30 years for aggravated vehicular hijacking, and 15 years for aggravated kidnapping. Petitioner

claimed in his *pro se* petition that his 105-year sentence violated the eighth amendment to the

United States Constitution (U.S. Const., amend VIII) and the proportionate penalties clause of

the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He claimed that pursuant to *People v.*

*House*, 2015 IL App (1st) 110580, the holdings in *Roper v. Simmons*, 543 U.S. 551 (2005),

*Miller v. Alabama*, 567 U.S. 460 (2012), and *Adams v. Alabama*, 136 S. Ct. 1796 (2016), were

"now applicable to 'young adults', 18 years of age to 25." The trial court summarily dismissed

his petition. For the following reasons, we affirm the trial court's summary dismissal of

defendant's *pro se* postconviction petition.

¶ 3                                    I. BACKGROUND

¶ 4       In 1998, petitioner was found guilty of the first-degree murder, aggravated vehicular

hijacking, and aggravated kidnapping of Ervin Shorter. At the time of the offenses, petitioner

was 22 years old. He was sentenced to death. On direct appeal to the Illinois Supreme Court, his

convictions were reversed and the matter was remanded for a new trial. *People v. Morris*, 209 Ill.

2d 137 (2004).

¶ 5       Petitioner was convicted again on retrial in 2006 and sentenced to consecutive terms of

60 years for first-degree murder, 30 years for aggravated vehicular hijacking, and 15 years for

aggravated kidnapping. As the trial evidence is not at issue, we summarize only those facts

necessary to an understanding of the issues raised in this appeal.

¶ 6       In a handwritten statement, petitioner stated that he and his accomplices discussed

robbing a bank the night before the murder to obtain money for petitioner to leave the area and

2

live with his uncle in Atlanta. They targeted the victim because they thought he was a drug dealer. Petitioner stated that he was armed with a firearm, that he carjacked the victim and forced the victim into the trunk of the victim's car. Petitioner and his accomplices eventually pulled into an alley, ordered the victim out of the trunk, told him to get on the ground, and shot him twice in the head as he begged for his life.

¶ 7    At petitioner's sentencing hearing, the State argued that petitioner should receive the maximum sentence for each of the crimes he committed, resulting in an aggregate sentence of 105 years in prison. The State argued that petitioner's extensive criminal background warranted the requested sentence.

¶ 8    In mitigation, defense counsel stated that petitioner "wasn't a child" when he committed the crimes, but that he "never had a childhood." Defense counsel stated that the person that committed the crimes in 1995 was a different person, and that he wanted to go to college and law school.

¶ 9    The trial court then stated:

"When I look at factors in aggravation, as in all cases, the facts of the case are always significant and loom high. And if I had to summarize this, what happened here, it would be fairly simple. [Petitioner] from the evidence was the moving force in a plan to rob or steal from banks, drug dealers or anybody. That plan mistakenly focused upon a regular guy, a working man, simply a citizen minding his own business on his way home, forced into his car at gun point, into the trunk of the vehicle, kidnapped, driven to the south side of the – north side of the city, removed from his own car, then shot to death by [petitioner]. I think the evidence clearly reflects that.

3

What this was clear and simple was an execution. There is a murder case pending. I'm not going to consider that in aggravation. There is other ample aggravation commented upon by the State within the presentence report. Experiences with the law at a younger age, a much younger age both in northern Illinois, Zion, and in Wisconsin, sawed-off shotgun, escape charges, misdemeanor charges as well. There is the factor of deterrence, [petitioner] as well as others similarly situated who might choose to emulate his conduct, follow in his footsteps.

I have read and listened to matters in mitigation now and some years ago. His formative years were not pleasant. He was raised by his mother. He was abandoned by his father at an early age. That we know. He lived in an unstable environment. Drugs. Violence, without the benefit of a nurturing home. His problems in school developed by adolescence; yet today he does have an equivalency, a GED for high school. And he enjoyed some sporadic employment over the years.

It appears from his testimony and from his presentence report that his major source of livelihood was illegal employment, drug selling. And there is evidence of abuse of alcohol, drugs.

I cannot say from this entire record that one could conclude that serious bodily harm or injury was neither intended nor caused. Obviously death is the ultimate form. And while that is implicit in all homicides, the manner of death may be a considered by the court and a factor.

Obviously the facts of this case are lacking any provocation, justification, excuse, any reasonable explanation. All the explanations are unreasonable. Nor could I say that the circumstances depicted by what occurred, albeit some years ago, would not recur if [petitioner] was again to be placed among civilized members of the society within the near and coming future.

The range of sentence as we know and has been highlighted is substantial. It could have been more given other circumstances. It will be the judgment of this court as to Count I, [petitioner] will be remanded to the custody of the Department of Corrections for a determinate sentence of 60 years. Count XIV, aggravated vehicular hijacking, the court will impose a consecutive sentence of 30 years. Count XXVI, the charge of aggravated kidnapping, the court will impose a sentence of 15 years consecutive, a total of 105 years."

¶ 10    Petitioner appealed his conviction and sentence to this court. *People v. Morris*, No. 1-06-3474 (March 27, 2009) (unpublished order pursuant to Illinois Supreme Court Rule 23). On appeal, he argued that the trial court erred in allowing his prior trial testimony to be admitted at his second trial, that the prosecutor committed error during closing and rebuttal argument, and that the imposition of consecutive sentences was improper. This court affirmed the judgment of the trial court. *Id*.

¶ 11    On August 29, 2016, petitioner filed a motion to vacate his conviction as void. Because petitioner did not cite to any statutory authority for filing the motion, the trial court characterized petitioner's motion as a petition for relief from judgment pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). In his motion, petitioner alleged the trial court improperly admitted his prior trial testimony at his retrial, and improperly

imposed consecutive sentences. The trial court found that the claims were barred by *res judicata* because petitioner had raised these same claims on direct appeal.

¶ 12    On February 15, 2017, petitioner filed a *pro se* petition for postconviction relief. Defendant contended in his petition that his sentence was a *de facto* life sentence and unconstitutional pursuant to: *People v. House*, 2015 IL App (1st) 110580, *Roper v. Simmons*, 543 U.S. 551 (2005), *Miller v. Alabama*, 567 U.S. 460 (2012), *Adams v. Alabama*, 136 S. Ct. 1796 (2016), the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends VIII, XIV), and article 1 sections 2 and 11 of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 11). Petitioner claimed that the "basis of the claim was not available to him until *People v. House* was decided." Petitioner stated that as "a result of *Miller* and *Montgomery*, states must now ensure that prisoners serving sentences of life without the possibility of parole or recently 'de facto life' for offenses committed before the age of 18 have the benefit of an individualized sentencing procedure that considers their youth and immaturity at the time of the offense."

¶ 13    Petitioner contended in his petition that "all juvenile cases handed down by the U.S. Supreme Court, specifically *Roper*, *Miller*, and *Adams*, are now applicable to 'young adults' 18 years of age to 25 as announced in *People v. House*, 2015 IL App (1st) 110580." Petitioner claimed that this court in *House* held that the tenets of *Miller* "are now available to 'young adults,' announcing a new rule." Petitioner concluded that his "de facto" life sentence was therefore unconstitutional "pursuant to *Miller*, *Montgomery*, *Adams*, and *House*, and Eighth Amendment U.S. Constitution; Article 1 sections 2 and 11 of the Illinois Constitution, and thus violates his substantive rights to due process."

¶ 14     On April 21, 2017, the trial court entered a written order on petitioner's *pro se* petition for postconviction relief. The trial court noted that the court in *House* found a violation of the proportionate penalties clause as applied to that defendant based on his particular circumstances including the defendant being "19 years and 2 months *** barely a legal adult and still a teenager," his unique family background, and his involvement as a lookout rather than an active participant in the crime." The trial court found that *House* was distinguishable from the case at hand because here petitioner was 22 years old at the time he committed the offense, and not "barely a legal adult" nor a teenager. The trial court found that the issues raised in petitioner's *pro se* postconviction petition were frivolous and patently without merit and dismissed the petition. Petitioner now appeals.

¶ 15                                             II. ANALYSIS

¶ 16     On appeal, petitioner contends that the trial court erred in its first-stage, summary dismissal of his *pro se* postconviction petition because he set forth a nonfrivolous, arguable claim that his sentence of 105 years' imprisonment for crimes committed when he was 22 years old was unconstitutional.[1]

¶ 17                              A. Post-Conviction Hearing Act

¶ 18     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)), "provides a statutory remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing." *People v. Dupree*, 2018 IL 122307, ¶ 28. A postconviction proceeding is a collateral attack on a prior conviction that is limited to constitutional matters that were not and could not have been previously adjudicated. *People v.*

---

[1] While defendant states in the "Nature of the Case" section of his brief that he is appealing the trial court's order summarily dismissing his *pro se* postconviction petition and *sua sponte* dismissing his *pro se* section 2-1401 petition for relief from judgment, his brief makes no mention of the section 2-1401 petition, and thus any argument related to that petition is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not argued are forfeited).

*Morris*, 236 Ill. 2d 345, 354 (2010). An action for postconviction relief is initiated in the circuit court in which the original proceeding took place. *People v. Tate*, 2012 IL 112214, ¶ 8.

¶ 19    A postconviction proceeding involves three stages. This case is at the first stage, in which the trial court independently reviews the petition "without input from the State, and determine[s] whether it is 'frivolous or is patently without merit.' " *People v. Johnson*, 2018 IL 122227, ¶ 14 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2018)).  "At the first stage of postconviction proceedings there are no hearings, no arguments, and no introduction of evidence. Instead, there is only a pleading, the postconviction petition, that the circuit court must independently consider to determine whether it is frivolous or patently without merit." *Id*. ¶ 21. A petition should be summarily dismissed under this standard "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). "A petition lacks an arguable basis in law when it is grounded in 'an indisputable meritless legal theory,' for example, a legal theory which is completely contradicted by the record." *Morris*, 236 Ill. 2d at 354 (quoting *Hodges*, 234 Ill. 2d at 16-17). "[A] petition alleging nonfactual and nonspecific assertions that merely amount to conclusions will not survive summary dismissal under the Act." *Id*.

¶ 20    At the first stage, "[t]he allegations of the petition, taken as true and liberally construed, need only present the gist of a constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010) (citing *People v. Harris*, 224 Ill. 2d 115, 126 (2007)). A petitioner need only present a limited amount of detail and is not required to include legal argument or citation to legal authority. *Id*. "A pro se petitioner is not excused, however, from providing any factual detail whatsoever on the alleged constitutional deprivation." *Id*. (citing *People v. Delton*, 227 Ill. 2d 247, 254 (2008)). In considering the petition, the trial court may examine the court file of the criminal proceeding, any transcripts of the proceeding, and any action taken by an appellate

8

court. 725 ILCS 5/122-2.1(c) (West 2018). The summary dismissal of a postconviction petition is reviewed *de novo*. *Tate*, 2012 IL 112214, ¶ 10.

¶ 21     A petition that is not subject to summary dismissal advances to the second stage, where counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2016). After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2016). At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 22     If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *People v. Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as factfinder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. *Id.*

¶ 23                                B. Eighth Amendment

¶ 24     Petitioner's first argument is that his sentence is facially unconstitutional under the eighth amendment of the United States Constitution (U.S. Const., amend VIII). "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). The United States Supreme Court has explained that that right "flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned' to both the offender and the offense." *Miller*, 567 U.S. at 469 (quoting *Roper*, 543 U.S. at 560). "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010). "And we view that concept less

through a historical prism that according to ' "the evolving standards of decency that mark the progress of a maturing society." ' " *Miller*, 567 U.S. at 469 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958 )).

¶ 25    In *Miller*, 567 U.S. at 465, the United States Supreme Court found that mandatory life without parole for offenders under 18 years old violated the eighth amendment. The Illinois Supreme Court has since found that the reasoning of "*Miller* applies to discretionary sentences as well." *People v. Holman*, 2017 IL 120655, ¶ 40; *People v. Buffer*, 2019 IL 122327, ¶ 27. Our supreme court found that the key issue is not whether the sentence was mandatory or discretionary but whether a certain process was followed – namely, a sentencing hearing where youth and its attendant characteristics were considered. *Holman*, 2017 IL 120655, ¶¶ 37-38. Thus, life sentences for offenders under 18 years old, whether mandatory or discretionary, violate the eighth amendment if the trial court failed to specifically consider "some variant of the *Miller* factors." *Holman*, 2017 IL 120655, ¶¶ 40, 43-44.

¶ 26    In the case at bar, petitioner's 105-year sentence, if applied to a juvenile, would be considered a *de facto* life sentence. However, the 22-year-old petitioner was well over 18 years old and, thus, not a juvenile offender. It is well-established that offenders who are 18 years and older cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases. *People v. Harris*, 2018 IL 121932, ¶¶ 59-61 (rejecting a facial challenge under the eighth amendment to a life sentence for an offender over 18 years old but under 21 years old, noting "the age of 18 marks the present line between juvenile and adults"). Since petitioner was 22 years old at the time of his crime, he cannot avail himself of the eighth amendment. *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 28.

¶ 27                    C. Proportionate Penalties Clause

10

¶ 28    Defendant further maintains that his sentence violates the proportionate penalties clause of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A sentence violates the proportionate penalties clause "if the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). "The purpose of the proportionate penalties clause is to add a limitation on penalties beyond those provided by the eighth amendment and to add the objective of restoring the offender to useful citizenship." *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 35. Thus, the proportionate penalties clause goes further than the eighth amendment in offering protection against oppressive penalties. *Id*.

¶ 29    We begin by briefly addressing the United States Supreme Court's decision in *Miller*, which held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.' " *Miller*, 567 U.S. at 465. The Court held that "children are constitutionally different from adults for purposes of sentencing." *Id*. at 471. The Court recognized three significant characteristics of juvenile offenders: (1) their lack of maturity and a fully developed sense of responsibility, which leads to dangerous behavior that is careless, impulsive, and reckless; (2) juveniles are more vulnerable to negative influences and outside pressures, they have limited control over their own environment, and they lack the ability to extricate themselves from crime-producing settings; and (3) juveniles are more capable of change than adults, and their actions are less likely to be evidence of irretrievably depravity. *Id*. While opining that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon," the Court stated that "we do not

11

foreclose a sentencer's ability to make that judgment in homicide cases," but "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id*. at 479.

¶ 30    The Court explained that its holding in *Miller* was that life imprisonment without parole is unconstitutional for "juvenile offenders whose crimes reflect the transient immaturity of youth," except for "the rare juvenile offender whose crime reflects irreparable corruption." *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016) citing *Miller*, 567 U.S. at 479-80). Accordingly, to separate those juveniles who may be sentenced to life without parole from those who may not, a hearing is required at which the sentencing court must "consider a juvenile offender's youth and attendant circumstances before determining that life without parole is a proportionate sentence." *Id*. at 734-35.

¶ 31    The Illinois Supreme Court has held that the sentencing protections of *Miller* apply not only to sentences of mandatory life imprisonment without parole, but also to *de facto* life sentences imposed on juvenile offenders (*People v. Reyes*, 2016 IL 119271, ¶ 9), which is a sentence that is over 40 years in prison (*Buffer*, 2019 IL 122327, ¶¶ 40-41). To prevail on a claim based on *Miller* and its progeny, "a defendant sentenced to an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Buffer*, 2019 IL 122327, ¶ 27 (citing *Holman*, 2017 IL 120655, ¶ 40; *Reyes*, 2016 IL 119271, ¶ 9).

¶ 32    Our supreme court has since been presented with the argument that the *Miller* protections extend to offenders who commit offense after they turn 18 years old. In *People v. Thompson*, 2015 IL 118151, ¶ 39, the court declined to allow a defendant who committed murders at age 19

to argue on appeal from a dismissal of a section 2-1401 petition that his mandatory life sentence was unconstitutional pursuant to Miller, because defendant had not asserted this claim in the trial court. The court stated that a postconviction petition was an avenue by which the defendant could attempt to assert his constitutional claim in the trial court, but it declined to express an opinion on the merits of such a claim. *Id*. ¶ 44.

¶ 33    In *Harris*, 2018 IL 121932, the supreme court addressed a direct appeal by a defendant who had been 18 years and 3 months old at the time of the offenses giving rise to his convictions for first-degree murder, attempted first-degree murder, and aggravated battery with a firearm. He argued that his mandatory aggregate sentence of 76 years violated the proportionate penalties clause and the eighth amendment as applied to him. The appellate court held that the defendant's sentence violated the proportionate penalties clause, but the supreme court reversed. *Id*. ¶ 34-48. It stated that the defendant was presenting an "as-applied" constitutional challenge to his sentence rather than a "facial" challenge, but his failure to raise this challenge in the trial court meant that the trial court had neither held an evidentiary hearing nor made findings "on the critical facts needed to determine whether *Miller* applies to defendant as an adult." *Id*. ¶ 46. The supreme court noted that "the record here does not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances." *Id*. The supreme court held that the defendant's as-applied challenge under the proportionate penalties clause was premature, and one that would be more appropriately raised in postconviction proceedings. *Id*. The supreme court, did, however, reject the defendant's facial challenge to his sentence under the eighth amendment, recognizing, as discussed above, that the age of 18 marked the line separating juveniles and adults for purposes of the eighth amendment. *Id*. ¶¶ 49-61.

¶ 34      In *People v. House*, 2019 IL App (1st) 110580-B, *pet. for leave to appeal granted*, No. 125124 (Jan. 29, 2020), which was issued after the supreme court directed this court to reconsider its earlier 2015 opinion in light of *Harris*, this court, upon review of the dismissal of a second-stage postconviction proceeding, held that a 19-year-old offender's mandatory life sentence was unconstitutional under the proportionate penalties clause as applied to him, vacated the sentence, and remanded the case for a new sentencing hearing. *Id*. ¶ 65. The court recognized that the defendant was not a juvenile when he committed the offense but opined that his young age of 19 was relevant under the circumstances of the case. *Id*. ¶ 46, 63. Also relevant were the facts that the defendant had served only as a lookout during the shooting at issue and had been found guilty of murder on a theory of accountability. *Id*. ¶ 46. He also received the same sentence of mandatory natural life in prison as the actual shooter, whereas another codefendant with culpability similar to that of the defendant had already been released from prison because the codefendant had been only 17 years old at the time of the offense. *Id*. The court further opined that the mandatory nature of the defendant's sentence had precluded the trial court from considering the goal of rehabilitation in imposing the sentence, which the court found especially relevant to the defendant's case. *Id*. ¶ 64. Given the defendant's young age, family background, actions of being only a lookout, and lack of prior violent convictions, the court held that the mandatory sentence of natural life "shocks the moral sense of community." *Id*.  This case is currently pending on appeal before the Illinois Supreme Court.

¶ 35      Since *House*, this court has issued decisions rejecting attempts by petitioners who were 18 years old or older at the time of their offenses to file successive postconviction petitions raising as-applied challenges under the proportionate penalties clause. See, *e.g.*, *People v. Carrion*, 2020 IL App (1st) 171001, ¶¶ 30-33; *People v. Gomez*, 2020 IL App (1st) 173016, ¶¶

37-38; *People v. McClurkin*, 2020 IL App (1st) 171274, ¶¶ 20-23; *People v. Handy*, 2019 IL App (1st) 170213, ¶¶ 40-41; *People v. Moore*, 2020 IL App (4th) 190528, ¶¶ 38-41; *People v. White*, 2020 IL App (5th) 170345, ¶¶ 31.

¶ 36     In other cases, this court and other districts of the appellate court have issued decisions reversing trial courts that summarily dismissed postconviction petitions at the first stage or denied leave to file successive postconviction petitions, where offenders age 18 or older raised claims that in light of recent developments in brain science, lengthy sentences imposed on them without consideration of their youth and rehabilitative potential violated the proportionate penalties clause as applied to them. See, *e.g.*, *People v. Savage*, 2020 IL App (1st) 173135, ¶ 76; *People v. Franklin*, 2020 IL App (1st) 171628, ¶¶ 68-69; *People v. Daniels*, 2020 IL App (1st) 171738, ¶¶ 2, 34; *People v. Ruiz*, 2020 IL App (1st) 163145, ¶¶ 1, 38-40; *People v. Johnson*, 2020 IL App (1st) 171362, ¶¶ 1-2, 15-16; *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109; *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 47; *People v. Bland*, 2020 IL App (3d) 170705, ¶ 14. Several of these cases were issued with dissents. *Franklin*, 2020 IL App (1st) 171628, ¶¶ 75-98 (Burke, J. dissenting); *Ruiz*, 2020 IL App (1st) 16314, ¶¶ 74-92 (Pierce, J. dissenting); *Johnson*, 2020 IL App (1st) 171362, ¶¶ 37-52 (Pierce, J. dissenting).

¶ 37     Significantly, of all the cases cited above, only one defendant – the defendant in *Savage* was over the age of 21. The rest of the defendants were between 18 years of age and 21 years of age. We find this critical to our analysis because "Illinois law treats adults under 21 years of age differently than adults." *Savage*, 2020 IL App (1st) 173135, ¶ 67; see 730 ILCS 5/3-3-9(a)(1.5) (West 2018) (parole review for under 21-year-olds is called "youthful offender parole"). Our legislature recently changed the law to make a person convicted of first-degree murder eligible for parole after serving only 20 years if he or she was under 21 years old at the time of the

offense and was sentenced after the law took effect. Pub. Act 100-1182 (eff. June 1, 2019) adding 730 ILCS 5/5-4.5-110; Pub. Act. 101-288, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)). The Juvenile Court Act of 1987 defines a "[m]inor" as "a person under the age of 21 years subject to this Act" (705 ILCS 405/1-3(10) (West 2018)), while an "[a]dult" means "a person 21 years of age or older." 705 ILCS 405/1-3(2) (West 2018).

¶ 38    As recently explained by this court in *Savage*:

"Our state treats under 21-year-olds differently in other ways, such as prohibiting sales to them of alcohol (235 ILCS 5/6-16(a)(i) (West 2018), cigarettes (720 ILCS 675/1 (West Supp. 2019), and wagering tickets (230 ILCS 10/18(b)(1) (West 2018); prohibiting their gun ownership without parental permission (430 ILCS 65/4(a)(2)(i) (West 2018); and limiting Class X sentencing for recidivist offenders to those offenders 'over the age of 21 years' (730 ILCS 5/5-4.5-95(b) (West 2019). See also *People v. Mosley*, 2015 IL 115872, ¶ 36 (a band on handgun possession by 'minors' under 21 does not violate the second amendment); 760 ILCS 20/2(a) (West 2018) (Illinois Uniform Transfers to Minors Act defines an adult as one '21 years of age' or older)."

¶ 39    In *Savage*, the court found that while the "defendant was seven months past his 21st birthday at the time of the offense," his argument in his first stage postconviction petition that mental health issues may lower a defendant's functional age had support in recent case law. *Id.* ¶ 70 (citing *House*, 2019 IL App (1st) 110580-B, ¶ 59, *pet. for leave to appeal granted*, No. 125124 (Jan. 29, 2020)). The court noted that the defendant's petition alleged that he had been a drug addict since he was nine years old, that he was using drugs at the time of the offense, and

that he was attempting to rob a drug house when the offenses in the case occurred. *Id*. ¶ 71. His petition further alleged that his long-term addiction and his young age left him "more susceptible to peer pressure" and "more volatile in emotionally charged settings." *Id*.

¶ 40    This court found that these allegations found support in a hospital discharge report that was filed in connection with the preparation of the defendant's PSI, which indicated that defendant began abusing drugs when he was 9 years old. *Id*. ¶ 72. This court found that while the trial court mentioned the defendant's age, the record "did not show that the trial court considered the attributes of young adulthood or these attributes in light of defendant's lifelong drug addiction." *Id*. ¶ 74.

¶ 41    Importantly, the court in *Savage* distinguished another recent case, *People v. Rivera*, 2020 IL App (1st) 171430, where this court denied a defendant, who was 23 years old at the time of the offense, leave to file a successive postconviction petition. The court in *Savage* stated that the defendant in *Rivera* "made no allegations in either his petition or in his appellate briefs that there were any issues particular to him, such as drug addiction or mental health, that rendered him functionally younger than his chronological age." *Id*. ¶ 78. Instead, the court noted, the defendant in *Rivera* relied on "general statements in recent case law about the impetuosity of the young that were generically applicable to all young adults." *Id*.

¶ 42    While recognizing that this case was dismissed at the first stage of postconviction proceedings, and not on a motion for leave to file a successive postconviction petition, we find that the petitioner in this case to be more akin to the defendant in *Rivera* than the defendant in *Savage*. In *Rivera*, the court noted that the defendant had two prior felony convictions for drug trafficking and gun possession. *Id*. ¶ 26. The court stated that the defendant's "actions in this case set forth none of the immaturity or impetuosity that are the hallmarks of youth." *Id*.

17

"Instead, the scheme in which he agreed to participate was a carefully planned and staged robbery – the coordinated effort of a number of offenders." *Id.*

¶ 43    Similarly here, petitioner had an extensive history of criminal activity. Before the crime in question occurred, he came up with a scheme to drive to Chicago and rob someone for money so that he could travel to Atlanta. Petitioner hijacked the innocent victim's car. He and his accomplices forced the victim into the trunk of the victim's car and drove him around before taking him out of the trunk in an alleyway. Petitioner then shot the victim in the head as the victim begged for his life.

¶ 44    Petitioner made absolutely no arguments in his postconviction petition that there were any issues particular to him, such as drug addiction or mental health, that rendered him functionally younger than his chronological age. In his appellate brief, petitioner recognizes that he failed to "attach any scientific evidence to support his claim," and instead relies, as the defendant did in *Rivera*, on general statements in recent case law about the impetuosity of the young.

¶ 45    While we recognize that a petitioner at the first stage need only present a limited amount of detail in the petition because petitions are drafted at this stage by defendants with little legal knowledge or training, and that the threshold for survival is low, a *pro se* petitioner is not "excused from providing any factual detail at all surrounding the alleged constitution violation." *Hodges*, 234 Ill. 2d at 9-10. The Act also provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2018). The purpose of the "affidavits, records or other evidence" requirement is to establish that the petition's allegations are capable of objective or independent corroboration. *Hodges*, 234 Ill. 2d at 10. "Thus, while a *pro se* petition is not expected to set

18

forth complete and detailed factual recitation, it must set forth some facts which can be corroborated and are objective in nature or contain some explanation as to why those facts are absent." *Delton*, 227 Ill. 2d at 254-55.

¶ 46   While petitioner makes a brief statement on appeal that "it is fair to say that [petitioner]'s childhood was marked by violence, injury, and indifference," there are no facts presented in the postconviction petition, the appellate briefs, or in the record on appeal that support an allegation that there were any issues particular to him that rendered him functionally younger than his chronological age of 22 years old.

¶ 47   The defendant in *Rivera* argued, similarly to petitioner, "that the same considerations, which were applied to under-18-year-olds and which have been arguably extended in some cases and statutes to under-21-year-olds, should be extended further to under-24-year-olds." *Rivera*, ¶ 27. We agree with the court in *Rivera* that "[i]f such an extension should be made – and we are not saying that it should – it should be made by our legislature or our highest court." *Id*. Accordingly, we affirm the trial court's summary dismissal of petitioner's first-stage postconviction petition.

¶ 48                                   III. CONCLUSION

¶ 49   For the foregoing reasons, we affirm the trial court's dismissal of petitioner's first stage *pro se* postconviction petition.

¶ 50   Affirmed.